NUMBER 13-10-00250-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI -
EDINBURG 


                                                                                                                     


 

CHARLES RUTH III,                                                            
    Appellant,

 

v.

 

THE STATE OF TEXAS,                                                     Appellee.

                                                                                                                     
  

 

On appeal from the 107th
District Court 

of Cameron County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Garza  

Memorandum Opinion by
Justice Rodriguez

                                                                                                                        

            Appellant Charles Ruth III challenges his
convictions by a jury for two counts of burglary of a habitation (counts one
and two) and one count of aggravated assault (count three).  See Tex. Penal Code Ann. § 22.02(a)(1)
(West Supp. 2010), § 30.02(a)(3) (West 2003).  By five issues, Ruth complains
that the evidence was legally insufficient to support his convictions, the
State improperly commented on his post-arrest silence, the trial court
erroneously admitted evidence of a prior conviction without a limiting
instruction, and his multiple convictions constituted double jeopardy.  We
vacate and dismiss counts two and three of Ruth's conviction and affirm count
one.

I. 
Background

 

            Ruth was indicted for two counts of burglary
of a habitation.  Count one read as follows:  

[O]n or about the 6th
Day of November, 2008, [Ruth] . . . did then and there intentionally or
knowingly enter a habitation, without the effective consent of Vashti Vela, the
owner thereof, and attempted to commit or committed an assault against Jose
Angel Alcorta.

 

(Emphases omitted.)  Count two reads as follows:  

[O]n or about the 6th
Day of November, 2008, [Ruth] . . . did then and there intentionally or
knowingly enter a habitation, without the effective consent of Vashti Vela, the
owner thereof, and attempted to commit or committed an assault against Vashti
Vela.

 

(Emphases omitted.)  Ruth was also indicted for one count
of aggravated assault (count three):  

[O]n or about the 6th
day of November, 2008, [Ruth] . . . did then and there intentionally,
knowingly, or recklessly cause bodily injury to Jose Angel Alcorta by stabbing
or cutting Jose Angel Alcorta, and [Ruth] did then and there use or exhibit a
deadly weapon, to wit:  a knife, during the commission of said assault.

 

(Emphases omitted.)  Finally, Ruth was indicted for
aggravated kidnapping.

Ruth pleaded not guilty to all counts,
and the case was tried to a jury.  The jury found Ruth guilty on the burglary
and aggravated assault charges (counts one, two, and three) and sentenced him
to thirty-five years' incarceration for each of those counts.[1] 
The trial court ordered the sentences to run concurrently.  This appeal
followed.

II. 
Sufficiency of the Evidence

 

            By his first issue, Ruth argues that the
evidence was legally insufficient to prove his identity for any of the
convicted offenses.  Specifically, Ruth argues that the testimony at trial did
not positively identify him as the perpetrator for either the burglaries or the
aggravated assault.  

            In a sufficiency review, courts examine all
of the evidence in the light most favorable to the verdict to determine whether
"any rational fact finder could have found guilt beyond a reasonable
doubt."  Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); see
Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) ("[T]he Jackson
legal-sufficiency standard is the only standard that a reviewing court should
apply in determining whether the evidence is sufficient to support each element
of a criminal offense that the State is required to prove beyond a reasonable
doubt.").  This standard requires reviewing courts to resolve any
evidentiary inconsistencies in favor of the judgment, keeping in mind that the
fact finder is the exclusive judge of the facts, the credibility of the
witnesses, and the weight to give their testimony.  Brooks, 323 S.W.3d
at 899; see Tex. Code Crim. Proc.
Ann. art. 38.04 (West 1979) ("The jury, in all cases, is the
exclusive judge of the facts proved, and of the weight to be given to the
testimony . . . .").  Appellate courts do not
re-evaluate the weight and credibility of the evidence; they only ensure that
the jury reached a rational decision.  Laster v. State, 275 S.W.3d 512,
517 (Tex. Crim. App. 2009).  

It is not necessary that the evidence
directly proves the defendant's guilt; "[c]ircumstantial evidence is as
probative as direct evidence in establishing the guilt of the actor, and
circumstantial evidence alone can be sufficient to establish guilt."  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); see Kuciemba v. State,
310 S.W.3d 460, 462 (Tex. Crim. App. 2010).  A fact finder may support its
verdict with reasonable inferences drawn from the evidence, and it is up to the
fact finder to decide which inference is most reasonable.  Laster, 275
S.W.3d at 523.

            Here, the evidence at trial showed that Ruth
and Vela had a prior relationship.  On November 5, 2008, Ruth called Vela at
work.  Vela did not answer Ruth's subsequent repeated calls or respond to his
text messages.  Vela testified that Ruth's messages were angry and aggressive
and accused her of "talking to [Alcorta]"; Vela stated that Ruth was
"threatening [her], calling [her] a bitch and a whore and just stuff like
that."

Later that evening, Vela met up with
Alcorta, who stayed with Vela at her apartment that night.  In the early
morning hours of November 6, 2008, Vela and Alcorta were awakened by loud
banging on the front door of Vela's apartment.  They did not answer the door. 
Vela testified that she looked outside and saw Ruth's car.  She testified that
she heard Ruth's car start up and leave; she knew it was Ruth's car leaving
because it "was late," so there was no one else awake in the parking
lot, and his car made a specific sound when it was starting.  Later in the
night, Vela and Alcorta were awakened by someone banging on and then breaking
in the back door of Vela's apartment.  The intruder proceeded to the bedroom. 
Vela hid in the closet while Alcorta confronted the intruder, who stabbed
Alcorta "on [his] side and on [his] armpit."  Alcorta identified the
intruder as Ruth.  Vela did not come out of the closet until the intruder had
fled the apartment.

            Ruth's sister, Cynthia Cuevas, testified that
around 4:00 a.m. on November 6, 2006, Ruth came to her home drunk, mad, and
covered in blood.  Ruth told Cuevas that "he had stabbed the little boy,
that he caught [Vela] with him and—I remember he said that it was his best
friend or something like that."

            Contrary to Ruth's assertion on appeal, there
was testimony at trial positively indentifying him as the intruder who stabbed
Alcorta.  Regardless, identity may be proved by either direct or circumstantial
evidence, and there was also ample circumstantial evidence in this case
identifying Ruth as the perpetrator of the charged offenses.  See Gardner v.
State, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009) ("[T]he State may
prove the defendant's identity . . . by either direct or circumstantial
evidence, coupled with all reasonable inferences from that evidence."); see
also Hooper, 214 S.W.3d at 13; Kuciemba, 310 S.W.3d at 462. 
His menacing messages to Vela, the presence of his car at the scene, and his
later appearance at his sister's house, where he was covered in blood and
admitted that he stabbed the "little boy" he "caught" with
Vela, all connect Ruth with the burglaries and the assault.

Viewing the evidence in the light most
favorable to the verdict, we conclude that a rational jury could have
identified Ruth, beyond a reasonable doubt, as the person who committed the
burglaries and aggravated assault.  See Jackson, 443 U.S. at 318-19; Brooks,
323 S.W.3d at 895.  Thus, the evidence supporting Ruth's convictions was
legally sufficient in this regard.  We overrule his first issue.                       

III. 
Comment on Post-Arrest Silence

 

            By his second issue, Ruth complains that the
State improperly commented on his post-arrest silence when the prosecutor
questioned a police officer "about the police giving suspects the
opportunity to tell police their side of the story."  Ruth also complains
that the State improperly commented on his post-arrest silence in its closing
argument.

            The State violates a defendant's Fifth
Amendment privilege against self-incrimination when it comments on his
post-arrest silence.  Doyle v. Ohio, 426 U.S. 610, 617-18 (1976).  This
is because commenting on a defendant's post-arrest silence raises an inference
of guilt in the same way as a comment on his failure to testify at trial.  Dinkins
v. State, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995).  To determine whether
the State commented on a defendant's exercise of his right to remain silent, we
view the language from the jury's standpoint and the context in which the
comment was made and decide whether the jury would necessarily and naturally
take it as a comment on the defendant's exercise of his constitutional right.  See
Bustamante v. State, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001).

            Ruth points to the following exchange between
the State and Harlingen Police Department Investigator Myriam Anderson as the
impermissible comment on his post-arrest silence during trial:

[Prosecutor]:                          And
like what do you look for that would corroborate that person's allegation,
"I just got stabbed"?

 

[Investigator
Anderson]:      The evidence would be injuries.  It would be witnesses;
statements made by the victims; and in the preliminary investigation, even
statements made by the suspect as well.

 

. . . .

 

[Prosecutor]:                          Okay. 
What happens if the suspect is not there?

 

[Investigator
Anderson]:      If the suspect is not there, later on a step that we take is to
give the suspect the opportunity to provide a statement to see if there is any
additional information.

 

[Prosecutor]:                          So
if a police officer comes to the scene of the crime and we have somebody acting
like that in the picture there, he's bleeding, actually blood is gushing out of
him and he gives you a statement, you know, can they assert, "Well, you
only got his side of the story.  It's all one sided"?  I mean—

 

[Defense
counsel]:              Your Honor, I'm going to object [to the State's allusion
to Ruth's Fifth Amendment right to not testify] . . . .

 

However, we have reviewed the testimony preceding this
exchange, and the context in which it occurred negates a conclusion that the
State commented on Ruth's post-arrest silence.  

In an earlier exchange with defense
counsel, Investigator Anderson testified regarding a domestic violence report
Vela had filed in 2003.  Defense counsel elicited testimony from Investigator
Anderson that Vela had given conflicting statements in that report.  When
defense counsel passed the witness, the State questioned Investigator Anderson
about the standard procedure for processing domestic violence complaints. 
Investigator Anderson testified that when the police receive a domestic
violence complaint, they conduct a "field investigation" that
involves interviewing "all the parties present" and "finding
possible witnesses."  Investigator Anderson testified that victims of
domestic violence often change their stories after the initial complaint and
that she does not necessarily consider that "a lie."  Thus, because
victim statements are often not reliable, Officer Anderson typically looks for
some sort of corroboration; in other words, she does not "just take that
person's word for it."  It was this explanation of investigation
techniques and procedures that led to Investigator Anderson's testimony about
looking for "injuries," "witnesses," victim statements, and
"even statements made by the suspect as well."  The prosecution's
follow-up comments that "you only got his side of the story" and
"[i]t's all one sided" flowed from their general discussion about how
the police take statements and investigate domestic violence cases and the
State's obvious attempt to rehabilitate Vela as a witness after defense counsel
elicited testimony that she may have lied in a report.  

Ruth also complains that the State
improperly commented on his post-arrest silence in its closing argument when it
stated, "Now, who else gave us the same testimony?  Well, how about the
defendant himself?"  What Ruth omits, however, is the argument preceding
and following that statement:

            And then
there's a fight, and there's blood on the floor.  There's a stabbing.  The
defendant flees out through the back.  And then Joey [Alcorta] leaves, but then
he comes back and he turns back when the police show up.  And then he had two
bloody puncture wounds.  Again, the photos also support what he testifies to.

 

            Now who
else gave us the same testimony?  Well, how about the defendant himself?  The
defendant told his sister Cynthia, and Cynthia then told us how the defendant
had told her that he had just finished coming from Valerie's house and found
her with someone and got into with that person, that he had stabbed that person
. . . .

 

            Okay.  Up
to this point, we have Valerie's testimony consistent with Joey's testimony
that is consistent with Cynthia's testimony . . . .

 

In context, the complained-of statement is clearly not a
comment on Ruth's post-arrest silence.  Instead, it is merely part of the State's
summary of the evidence, which included testimony by Ruth's sister that he
essentially admitted the stabbing to her.

Therefore, looking at the context in
which the foregoing complained-of exchange and statement occurred, we cannot
conclude that the jury would have necessarily and naturally taken them as
comments on Ruth's post-arrest silence.  We overrule Ruth's second issue.

 

IV. 
Admission of Prior Conviction Without Limiting Instruction

 

            By his third issue, Ruth argues that the
trial court violated rule of evidence 105 by refusing to give the jury a
limiting instruction when it admitted testimony related to Ruth's prior
conviction.  Ruth complains of the following exchange, in particular:

[Prosecutor]:              Okay. 
You mentioned—the question was, did you know that he had a criminal record?

 

[Vela]:                         Yes.

 

[Prosecutor]:              And
what criminal record is that from your understanding?

 

[Vela]:                         He's
a convict.  He had a burglary charge or something like that.[[2]]

 

[Prosecutor]:              Okay. 
Convict, how do you mean?

 

[Vela]:                         He
went to prison for like four years.

 

At this point, Ruth objected and asked for a limiting
instruction, specifically that "the jury be instructed that his prior
convictions or arrests are limited just for the purposes of him not being
qualified to be on the application for the apartment complex."  The trial
court denied the requested instruction, stating that the "door's been
opened on [Ruth's] criminal record."

Texas Rule of Evidence 105 provides:

When evidence which
is admissible as to one party or for one purpose but not admissible as to
another party or for another purpose is admitted, the court, upon request,
shall restrict the evidence to its proper scope and instruct the jury
accordingly; but in the absence of such request the court's action in admitting
such evidence without limitation shall not be ground for complaint on appeal.

 

Tex. R. Evid.
105(a).  Rulings on evidentiary issues are left to the trial court's sound
discretion.  See McCarty v. State, 257 S.W.3d 238, 239 (Tex. Crim. App.
2008).  A trial court abuses its discretion when its decision lies outside the
zone of reasonable disagreement.  Id.  We must uphold the trial court's
evidentiary ruling if it is correct under any applicable theory of law.  Trevino
v. State, 991 S.W.2d 849, 853 n.5 (Tex. Crim. App. 1999).

            Before the State asked Vela about Ruth's
criminal record in re-direct, defense counsel cross-examined Vela at length
about whether she and Ruth had ever lived together and, through his
questioning, attempted to establish that Ruth lived at the apartment at the
time of the alleged burglary.  In response to questions from defense counsel,
Vela testified that Ruth began living with her periodically beginning in 2007. 
Vela testified that Ruth was never listed on any of the leases for their
apartments "because he's a convict."  In connection with this
questioning, defense counsel admitted as evidence a series of documents from
the housing authority and apartment complex informing Vela that they were aware
that Ruth was living in the apartment and warning Vela that Ruth's residence at
the apartment was not permitted.  One of those documents was a letter from the
apartment complex manager to the housing authority notifying the housing authority
that Ruth had been "repeatedly warned about staying in [Vela's] apartment
without the proper permission."  According to the letter, Ruth told the
apartment complex manager that "he cannot add himself to the lease because
he has a criminal record."

The trial court did not err in admitting
Vela's testimony regarding Ruth's prior conviction without a limiting
instruction for two reasons.  First, Ruth's request for a limiting instruction
was untimely.  A party must request a limiting instruction at the first
admission of the challenged evidence.  Hammock v. State, 46 S.W.3d 889,
892 (Tex. Crim. App. 2001) (citing Garcia v. State, 887 S.W.2d 862, 878
(Tex. Crim. App. 1994)).  When the opposing party fails to request a limiting
instruction at this first opportunity, the evidence is admitted for all
purposes.  Id.  This is because "[a]llowing the jury to consider
evidence for all purposes and then telling them to consider that same evidence
for a limited purpose only is asking a jury to do the impossible.  If a limiting
instruction is to be given, it must be when the evidence is admitted to be
effective."  Id. at 894.  The evidence of Ruth's criminal history
came in, during Ruth's cross-examination of Vela, through his own admission
into evidence of Vela's various apartment and lease-related documents and his
own solicitation of testimony by Vela that Ruth is a convict.  When the State
later questioned Vela about Ruth's criminal history during re-direct, the
evidence had already been before the jury for some time.

Second, the State solicited Vela's
testimony about Ruth's criminal history as part of its efforts to rebut the
impression created by defense counsel's questioning that Ruth lived at the
apartment at the time of the burglary.  When an extraneous offense is admissible
to prove a main fact in the case, a limiting instruction is not required.  Porter
v. State, 709 S.W.2d 213, 215 (Tex. Crim. App. 1986).  Here, Ruth's
cross-examination of Vela created the impression that Ruth lived at the
apartment and, as such, sowed doubt as to whether he entered the apartment
without Vela's effective consent.  This was an essential element the State was
required to prove in the case.  See Tex.
Penal Code Ann. § 30.02(a); see also DeVaughn v. State, 749
S.W.2d 62, 65 (Tex. Crim. App. 1988) ("The gravamen of the offense of
burglary clearly remains entry of a building or habitation without the
effective consent of the owner . . . .").  When the State then questioned
Vela about Ruth's criminal history on re-direct, our review of the testimony
indicates that it was the lead-in to the State's attempts to establish why Ruth
did not live at the apartment and, accordingly, prove that Ruth entered the
apartment without the effective consent of the owner, Vela.  

            For these reasons, Ruth was not entitled to a
limiting instruction.  Because the trial court's ruling is correct under the
foregoing theories of law, we conclude that the court did not abuse its
discretion in admitting Vela's testimony about Ruth's prior conviction without
a limiting instruction.  Ruth's third issue is overruled.  

V. 
Double Jeopardy

 

            By two issues, Ruth argues that his
convictions violate the Double Jeopardy Clause of the United States
Constitution.  See U.S. Const.
amend. V.  Specifically, by his fourth issue, Ruth argues that his multiple
burglary convictions (counts one and two) constitute double punishment for a
single act; and by his fifth issue, Ruth argues that his convictions on the
first count of burglary (count one, which includes the commission or attempted
commission of assault against Alcorta) and the aggravated assault count (count
three, in which the victim was Alcorta) amount to Blockburger double
jeopardy because proving the burglary charge necessarily required the State to
prove all of the elements of the underlying aggravated assault.[3] 
See id.; Blockburger v. United States, 284 U.S. 299, 304 (1932).

            The Fifth Amendment provides that "[n]o
person shall be . . . subject for the same offense to be twice put in jeopardy
of life or limb."  U.S. Const.
amend. V.  "The United States Supreme Court has concluded that the Fifth
Amendment offers three separate constitutional protections:  (1) protection
against a second prosecution for the same offense after acquittal; (2)
protection against a second prosecution for the same offense after conviction;
and (3) protection against multiple punishments for the same offense."  Ex
parte Cavazos, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006) (citing North
Carolina v. Pearce, 395 U.S. 711, 717 (1969); Lopez v. State, 108
S.W.3d 293, 295-96 (Tex. Crim. App. 2003)).  This case poses issues of multiple
punishments for the same offense.

We address first whether Ruth's burglary
convictions under counts one and two violate the Double Jeopardy Clause—we find
they do.  In Ex parte Cavazos, the court of criminal appeals reasoned
and held as follows:

[A]
defendant suffers multiple punishments in violation of the Double Jeopardy
Clause when he is convicted of more offenses than the legislature intended. 
However, the Double Jeopardy Clause imposes few, if any, limitations on the
legislative power to establish and define offenses.  The legislature,
therefore, determines whether offenses are the same for double-jeopardy
purposes by defining the "allowable unit of prosecution."  The legislature
also decides whether a particular course of conduct involves one or more
distinct offenses under a given statute.  Consequently, the scope of the Double
Jeopardy Clause's protection against multiple punishments under the burglary
statute depends on ascertaining the allowable unit of prosecution.

 

            . . . .

 

            [T]he
gravamen of a burglary is the entry without the effective consent of the owner
and with the requisite mental state.  This Court has found that, when a
burglary is committed, the harm results from the entry itself.  The offense is
complete once the unlawful entry is made, without regard to whether the
intended theft or felony is also completed.

 

The
allowable unit of prosecution for an assaultive offense is each complainant. 
Burglary, however, is not an assaultive offense; rather, its placement within
Title 7 [of the penal code] indicates that the legislature determined burglary
to be a crime against property.  Thus, the complainant is not the appropriate
allowable unit of prosecution in a burglary[;] rather, the allowable unit of
prosecution in a burglary is the unlawful entry.  [A defendant]'s convictions
violate double jeopardy [when] he is punished multiple times for a single
unlawful entry.

            

203 S.W.3d at 336, 337 (internal citations and quotations
omitted).  Ruth's two burglary convictions fit squarely within the foregoing
holding.  The only difference between the two counts of conviction is the
alleged assault victim.  Both counts are based on a single unlawful entry, and
it is that unlawful entry that is the allowable unit of prosecution for
purposes of our constitutional analysis.  See id.  For this reason, we
conclude that Ruth's convictions on counts one and two constitute multiple
punishments for one unlawful entry and, as such, violate the Fifth Amendment's
double jeopardy prohibition.  Ruth's fourth issue is sustained.

With regard to Ruth's second double
jeopardy contention, we note that the State appears to concede that Ruth's
convictions for counts one and three violate the prohibition against double
jeopardy.  And we agree.  The Texas Court of Criminal Appeals has held that 

[A] defendant may not
be punished for both the underlying felony and burglary if the burglary
allegation is that the defendant entered a home without the consent of the
owner and then committed the underlying felony within the home as defined in
[section] 30.02(a)(3).  Thus, the State may obtain either a burglary or the
underlying felony (or theft or assault) conviction if it alleges a burglary
under [s]ection 30.02(a)(3) of the [p]enal [c]ode, but not both.  

 

Langs v. State, 183 S.W.3d 680, 686 (Tex.
Crim. App. 2006) (citations omitted).  Here, through Ruth's convictions for
both count one and count three, the State did just that.  In count one, Ruth was
convicted, pursuant to penal code section 30.02(a)(3), of entering Vela's home
without her consent and committing or attempting to commit assault against
Alcorta.[4] 
See Tex. Penal Code Ann. §
30.02(a)(3).  And in count two, Ruth was convicted of assaulting Alcorta.  The
Constitution prohibits this multiple-punishment scenario.  See Langs,
183 S.W.3d at 686; see also Blockburger, 284 U.S. at 304.  As such, we
conclude that Ruth's convictions for counts one and three are also multiple
punishments for the same offense, which violate the Fifth Amendment.  Ruth's
fifth issue is sustained.

The question remaining is which counts
of conviction should be vacated and which retained.[5] 
"The Supreme Court has directed that when a defendant is convicted in a
single criminal action of two offenses that are the 'same' for double jeopardy
purposes, the remedy is to vacate one of the convictions."  Landers v.
State, 957 S.W.2d 558, 559 (Tex. Crim. App. 1997), overruled on other
grounds by Ex parte Cavazos, 203 S.W.3d at 338 (citing Ball v. United
States, 470 U.S. 856, 864-65 (1985)).  In making that determination, we
retain the conviction for the "most serious" offense and set aside
the other.  Ex parte Cavazos, 203 S.W.3d at 337.  "[T]he 'most
serious' offense is the offense of conviction for which the greatest sentence
was assessed."[6] 
Id. at 338.  

In this case, the punishments imposed
for all three counts of conviction are identical:  for each offense, Ruth was
sentenced to thirty-five years' incarceration, no fine was assessed, and no
restitution was ordered.  Thus, no offense in this case is "more
serious" than any other.[7] 
In Ex parte Cavazos, however, the court of criminal appeals appears to have
left one door open.  The court noted that "[s]ome of our case law suggests
that, all other factors being equal, the conviction that should be affirmed is
the offense named in the first verdict form" and that, "[g]enerally,
this will be the offense described in Count I of the indictment."  Id.
at 339 n.8 (citing Ex parte Cravens, 805 S.W.2d 790, 791 (Tex. Crim.
App. 1991); Ex parte Siller, 686 S.W.2d 617, 620 (Tex. Crim. App. 1985))
(other citations omitted).  Because we face an unsettled question in the case
before us and because the court of criminal appeals expressly declined to
address the issue in Ex parte Cavazos, see id., we choose to
return to the approach favored by earlier case law and retain the
first-indicted offense.  See Ex parte Cravens, 805 S.W.2d at 791; Ex
parte Siller, 686 S.W.2d at 620; see also Scroggs v. State, Nos.
07-07-0453-CR, 07-07-0454-CR, 2010 WL 1993676, at *12 (Tex. App.—Amarillo May
19, 2010, pet. dism'd) (breaking the tie by retaining first-indicted
conviction); Pinkston v. State, No. 02-08-165-CR, 2009 WL 2414373, at *7
(Tex. App.—Fort Worth Aug. 6, 2009, no pet.) (mem. op., not designated for
publication) (same).

Thus, as between Ruth's two burglary
convictions, we set aside count two (unlawful entry without Vela's consent and
the assault or attempted assault of Vela) and retain count one (unlawful entry
without Vela's consent and the assault or attempted assault of Alcorta).  Then,
as between Ruth's count one burglary conviction and count three assault
conviction, we set aside count three and retain count one.

VI. 
Conclusion

 

            We vacate and dismiss counts two and three of
Ruth's conviction and affirm count one.

                

                                                                                                             NELDA
V. RODRIGUEZ

                                                                                                             Justice

 

Do not publish.

Tex.
R. App. P.
47.2(b).

 

Delivered and filed
the 29th 

day of August, 2011.

                                                                                                                                                            









[1]
The jury acquitted Ruth of aggravated kidnapping.





[2]
The record indicates that Ruth's prior conviction was for robbery.





[3]
The State asserts that because Ruth did not raise these multiple-punishment
double jeopardy issues in the trial court, he has not preserved them for our
review.  However, the double jeopardy violations in this case are apparent on
the face of the record and the enforcement of procedural default rules would
serve no legitimate state interest as the convictions at issue happened in the
same court, on the same day, before the same judge, and were based on the same
evidence.  See Gonzalez v. State, 8 S.W.3d 640, 643 & n.15 (Tex.
Crim. App. 2000) (citations omitted).  Thus, Ruth may raise them for the first
time on appeal.  See id. at 643-44; Langs v. State, 183 S.W.3d
680, 687 (Tex. Crim. App. 2006).





[4]
An attempted offense is the same offense as the committed offense for purposes
of double jeopardy.  See Langs, 183 S.W.3d at 685 (citing Brown v.
Ohio, 432 U.S. 161, 168-69 (1977)) (holding that one of the contexts in
which a multiple-punishments claim can arise is "the lesser-included
offense context, in which the same conduct is punished twice; once for the
basic conduct, and a second time for that same conduct plus more (for example,
attempted assault of Y and assault of Y; assault of X and aggravated assault of
X)").





[5]
In its brief, the State suggests that this Court "dismiss Count One of the
indictment" and posits that "[i]n dismissing Count one of the
indictment[,] the allegations contained in Counts two and three are no longer
issues of double jeopardy."  While we agree with the State that this
would, indeed, remedy the double jeopardy issues posed by Ruth's convictions,
the State cites no authority for its suggestion and does not otherwise explain
why dismissing count one would be the correct course of action.  And for the
reasons discussed infra, we conclude that dismissing count one is not,
in fact, the correct disposition in this case.





[6]
In Ex parte Cavazos, the defendant was sentenced to twenty-five years'
incarceration for both burglary offenses; the court determined that the
conviction that included $122.00 in restitution was the most serious offense
and retained that conviction.  203 S.W.3d 333, 338-39 (Tex. Crim. App. 2006).





[7]
Neither do the convictions in this case include any distinguishing factor
utilized by the courts since Ex parte Cavazos for other seemingly
identical sentences, such as:  a differing degree of felony between the
convictions, see Bigon v. State, 252 S.W.3d 360, 373 (Tex. Crim. App.
2008); an affirmative finding of the use of a deadly weapon in one conviction
over another, see Villanueva v. State, 227 S.W.3d 744, 749 (Tex. Crim.
App. 2007); or one conviction was a second-degree felony enhanced to a
first-degree, whereas the other was an unenhanced first-degree felony, see
Williams v. State, 240 S.W.3d 293, 301-02 (Tex. App.—Austin 2007, no pet.).