# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00039-CR

**Marcus Williams, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. D-1-DC-05-904127, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## O P I N I O N

A jury convicted appellant Marcus Williams of the offenses of robbery and aggravated robbery. *See* Tex. Penal Code Ann. §§ 29.02, 29.03 (West 2003). The jury assessed punishment at 60 years' confinement for each offense, with the sentences to run concurrently. In a single issue on appeal, Williams asserts that there was insufficient evidence to support the jury's finding that Williams exhibited a deadly weapon. Additionally, although Williams did not raise the issue, the State, in a supplemental brief, concedes that Williams's convictions for both robbery and aggravated robbery violated double jeopardy. The State asks us to affirm the district court's judgment convicting Williams of aggravated robbery and vacate Williams's conviction for robbery. We overrule Williams's sufficiency issue and agree with the State that a double jeopardy violation occurred. We conclude, however, that under the circumstances present here, we must instead affirm Williams's conviction for robbery and vacate his conviction for aggravated robbery.

## BACKGROUND

The jury heard evidence that in the early morning hours of August 4, 2004, Alejandro Catemaxa and his son Claudio were robbed at gunpoint in the parking lot of their apartment complex. The State's evidence included the testimony of Alejandro and Claudio, police officer Manuel Jimenez, and robbery detective Richard Guajardo.

Alejandro testified that he and his son lived in the same apartment and would often drive to work together. On the morning in question, Alejandro was waiting in the parking lot for his son when he was approached by two men in a truck. Alejandro testified that the men were asking for directions to places that they said were on "Lamar or Guadalupe or something like that." Alejandro's suspicions were aroused because he knew that the places to which the men were asking directions were not close to either street.

Alejandro further testified that when Claudio came outside and the pair tried to get in their car to leave, one of the men pulled out a gun and pointed it at Alejandro. The man was speaking to him in English, which Alejandro could not understand. However, Alejandro testified that he understood from the man's gestures that "he wanted something." Alejandro gave the man his wallet and Claudio did the same. The men then drove away. Alejandro identified Williams as the man who had pointed the gun at him.

During Alejandro's testimony, the State showed Alejandro a gun recovered during the robbery investigation and asked Alejandro whether he could identify it as the type of weapon that had been pointed at him during the robbery. Alejandro answered that the gun appeared similar but

2

not identical.  Alejandro explained that he could only see the upper part of the weapon when he was robbed because of the angle at which the gun had been pointed at him.

Claudio, who understood English better than his father, testified that Williams told them to "give him everything because he was going to kill us with a gun."  Claudio testified that he saw the gun and that Williams pointed it at both of them.  Claudio explained that he gave Williams his wallet because he was afraid that either he or his father would be injured or even killed.  Claudio identified Williams as the man with the gun.  Claudio was also shown the gun that was recovered during the investigation and was asked if it looked like the gun that was used on him.  Claudio testified, "It's similar to the one I saw, but I can't say that's the one."

Because Alejandro and Claudio spoke little English, Officer Manuel Jimenez was called to the crime scene to translate for and interview the victims.  Jimenez testified that Alejandro described how Williams got out of his vehicle, approached Alejandro, asked for directions, pulled out a weapon, and placed it on Alejandro's chest.  Jimenez further testified that Alejandro described the weapon as "an automatic with a black on top and white on bottom."

Detective Richard Guajardo investigated the robbery and testified that, in a photo lineup, Alejandro identified Esteban Benitez and Williams as the men who robbed him.  Guajardo also testified that a $CO_2$-powered BB gun was found in Benitez's hotel room during the investigation.  Guajardo explained that there was also a second, unrecovered gun that Williams claimed to own at around the time the robbery occurred.  Guajardo could not testify with certainty which of the two weapons Williams used during the robbery.  However, Guajardo did note in his investigation report that the gun described by Alejandro matched the gun seized from the hotel room.

3

Guajardo testified that a CO2-powered BB pistol was capable of causing death or serious bodily injury. Specifically, Guajardo explained that it could put out an eye, break a tooth, or even cause death if shot at someone's abdomen or head. Guajardo also read to the jury the warning on the gun, which stated that "misuse or careless use may cause serious injury or death."

The State indicted Williams for the offenses of robbery and aggravated robbery. Count one of the indictment alleged that, on or about August 4, 2004, Williams intentionally and knowingly placed Alejandro Catemaxa in fear of imminent bodily injury or death while in the course of committing theft of property and with intent to obtain and maintain control of said property. Count two of the indictment alleged the same offense, the same date, and the same victim as count one but added an allegation that a deadly weapon was used during the commission of the offense, namely a CO2-powered BB pistol. The jury convicted Williams of both counts in the indictment. Williams pleaded true to the enhancement paragraphs in the indictment alleging three prior felony convictions, and the jury assessed punishment at 60 years' confinement for each offense. This appeal followed.

## DISCUSSION

**Deadly-weapon finding**

In his sole issue on appeal, Williams asserts that the evidence was insufficient[1] to support the jury's finding that he exhibited a deadly weapon during the commission of the offense.[2]

---

[1] Williams does not specify in his brief whether he is challenging the legal or factual sufficiency of the evidence. We will address both.

[2] We note that the deadly-weapon finding is an element of aggravated robbery, not robbery. *See* Tex. Penal Code Ann. § 29.03(a)(2) (West 2003). Assuming we are correct in our double-jeopardy analysis in vacating the aggravated robbery conviction rather than the robbery conviction, Williams's challenge to the sufficiency of the evidence supporting the former conviction would be

4

When there is a challenge to the legal sufficiency of the evidence to sustain a criminal conviction, we consider whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *See Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). We consider even erroneously admitted evidence. *Id*.

In a factual sufficiency review, we view the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Id*. at 415. We will not reverse a case on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*. at 417.

---

moot. However, because the law governing which conviction we vacate is somewhat unsettled presently, we will address the sufficiency issue in the interest of judicial economy. *See* Tex. R. App. P. 47.1 (requiring us to prepare written opinion that addresses "every issue raised and necessary to final disposition of the appeal.").

Under both the legal and factual sufficiency standards of review, the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State*, 125 S.W.3d 661, 670 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981)). Under both legal and factual sufficiency reviews, an appellate court must be appropriately deferential to the fact-finder's role at trial. *Harvey v. State*, 135 S.W.3d 712, 717 (Tex. App.—Dallas 2003, no pet.) (citing *Jones v. State*, 944 S.W.2d 642, 647-48 (Tex. Crim. App. 1996)).[3] The jury may believe all, some, or none of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Jaggers*, 125 S.W.3d at 670. This standard of review applies to both direct and circumstantial evidence cases. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

Proof of the use or exhibition of a deadly weapon is an essential element of the offense of aggravated robbery as charged in the indictment. *See* Tex. Penal Code Ann. § 29.03(a)(2). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id*. § 1.07(a)(17)(B) (West Supp. 2006).

During the robbery investigation, a CO2-powered BB pistol was recovered from the hotel room of Esteban Benitez, Williams's alleged accomplice in the crime. Although Detective Guajardo testified that he could not be certain if this was the weapon used in the robbery, he did note in his investigation report that the gun described by Alejandro matched the gun seized from the hotel room. Furthermore, both Alejandro and Claudio testified that the gun recovered by the police was "similar" to the gun used in the robbery. Although neither individual could state with certainty that

---

[3] *See also Rivera v. State*, No. 03-04-00235-CR, 2005 Tex. App. LEXIS 3997, at *19 (Tex. App.—Austin May 26, 2005, no pet.) (not designated for publication).

this was the weapon used, a rational jury could infer that this uncertainty could have been due to the traumatic nature of being robbed at gunpoint.

Alejandro also explained that his view of the weapon was obscured by the angle at which Williams held it. However, Alejandro further testified that, despite minor differences, the gun shown to him in court was "the same, just a little bit bigger" than the gun used during the robbery. Claudio's testimony about the gun corroborated Alejandro's testimony. We find nothing irrational about the jury's decision to infer from the testimony of the two victims that the gun used during the commission of the robbery was the same gun recovered by the police. *See Abbott v. State*, 726 S.W.2d 644, 647 (Tex. App.—Amarillo 1987, pet. ref'd) (testimony that gun "looks like" and "could have been" weapon used was sufficient).

There is also the issue of Detective Guajardo's testimony that Williams told him that he owned a second gun at around the time of the robbery. The police were unable to recover this gun. However, Detective Guajardo also testified that Williams told him that he had traded one gun for the other. A rational jury could infer that this other gun had been traded away prior to the robbery in exchange for the $CO_2$-powered BB pistol, especially considering that the police were unable to recover the other gun but were able to recover the BB pistol.

We also find nothing irrational about the jury's decision to infer that the BB pistol allegedly used during the commission of the offense was a deadly weapon. "[A]n object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury." *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Here, the uncontroverted testimony of Alejandro and Claudio establishes that Williams pointed the gun directly at them during the robbery. Officer Jimenez testified that Alejandro told him that Williams

7

placed the gun on Alejandro's chest. Detective Guajardo provided uncontroverted testimony that a CO2-powered BB pistol is capable of causing serious bodily injury or even death if pointed toward a person's head or abdomen. The jury also heard Guajardo read the warning label on the gun, which stated that "misuse or careless use may cause serious injury or death." "With testimony that a BB gun is capable of causing serious bodily injury, it is reasonable for a jury to make a deadly weapon finding." *Adame v. State*, 69 S.W.3d 581, 582 (Tex. Crim. App. 2002); *see Delgado v. State*, 986 S.W.2d 306, 308-09 (Tex. App.—Austin 1999, no pet.).

Viewing the evidence in the light most favorable to the verdict, we find that there was legally sufficient evidence to support the jury's deadly weapon finding. Considering all of the evidence in a neutral light, we find that there was factually sufficient evidence to support the jury's deadly weapon finding. We overrule Williams's sole issue on appeal.

**Double jeopardy**

In a supplemental brief, the State concedes that a double jeopardy violation occurred in this case because Williams received multiple punishments for the same offense.

The Fifth Amendment guarantee against double jeopardy protects against: (1) a second prosecution for the same offense following conviction; (2) a second prosecution for the same offense following acquittal; and (3) multiple punishments for the same offense. *Illinios v. Vitale*, 447 U.S. 410, 415 (1980); *Cervantes v. State*, 815 S.W.2d 569, 572 (Tex. Crim. App. 1991); *Berger v. State*, 104 S.W.3d 199, 204-05 (Tex. App.—Austin 2003, no pet.). When the same act or transaction violates two different penal statutes, the two offenses are the same for double-jeopardy purposes if one of the offenses contains all the elements of the other. *Blockburger v. United States*,

284 U.S. 299, 304 (1932). Cumulative punishment may be imposed where separate offenses occur in the same transaction, as long as each conviction requires proof of an additional element which the other does not. *Id.*; *Phillips v. State*, 787 S.W.2d 391, 394 (Tex. Crim. App. 1990). Absent indication of contrary legislative intent, it is presumed that the legislature did not intend to authorize multiple punishments for two offenses that are the same under the *Blockburger* test. *Whalen v. United States*, 445 U.S. 684, 691-92 (1980); *Duvall v. State*, 59 S.W.3d 773, 780 (Tex. App.—Austin 2001, pet. ref'd).

In Texas, an offense is included within another if, among other things, "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Tex. Code Crim. Proc. Ann. art. 37.09(1) (West 2006); *Hutchins v. State*, 992 S.W.2d 629, 631 (Tex. App.—Austin 1999, pet. ref'd). Under Texas law, the offense of aggravated robbery is defined as robbery, committed with the use or exhibition of a deadly weapon. *See* Tex. Penal Code Ann. § 29.03(a)(2). Thus, robbery is a lesser-included offense of aggravated robbery.

The legislature also determines whether offenses are the same for double-jeopardy purposes by defining the "allowable unit of prosecution." *Ex parte Hawkins*, 6 S.W.3d 554, 556 (Tex. Crim. App. 1999) (citing *Sanabria v. United States*, 437 U.S. 54 (1978)). In Texas, the allowable unit of prosecution for an assaultive offense such as robbery is per victim. *Id.* at 560. Thus, multiple convictions for the same offense committed against different victims do not violate double jeopardy. *Id.* at 561.

However, in this case, Williams was indicted for a single offense involving a single victim, Alejandro Catemaxa. The State did not name Claudio Catemaxa as a victim in either count of the indictment. Therefore, although it was permissible to submit both robbery and aggravated robbery to the jury, Williams could not be convicted of both. *See Berger*, 104 S.W.3d at 205. We agree with the State that Williams "was subjected to multiple punishment for the same criminal transaction in violation of double jeopardy." *Id*.

"When a defendant is convicted in a single criminal action of two offenses that are the 'same' for double jeopardy purposes, the remedy is to vacate one of the convictions." *Landers v. State*, 957 S.W.2d 558, 559 (Tex. Crim. App. 1997) (citing *Ball v. United States*, 470 U.S. 856, 864-865 (1985)). However, the law governing which of the convictions to vacate is currently unsettled. In *Landers*, the court of criminal appeals adopted "what we will call the 'most serious punishment' test" for determining which of the "same" offenses in the double-jeopardy context should be retained. *Id.* at 560. The *Landers* court explained that "[t]he 'most serious punishment' is the longest sentence imposed, with rules of parole eligibility and good time serving as a tie-breaker." The court's adoption of this rule was informed by its previous adoption of a similar rule in the misjoinder context: "when a defendant is convicted of two or more offenses that were misjoined, the remedy is to retain the most serious offense and vacate the remaining offenses." *Id.* at 559 (citing *Ex parte Pena*, 820 S.W.2d 806, 809 (Tex. Crim. App. 1991) (plurality opinion)).

"The most serious offense," under the rule that the court had applied in the misjoinder context, had been "determined by the degree of the felony, the range of punishment and the sentence imposed, with rules of parole eligibility and good conduct time as a tie-breaker." *Id.* When adopting

10

that rule, the court of criminal appeals rejected other "predominant methods" it had previously applied, including "[choosing] the offense that the defendant was convicted of first," "affirm[ing] the conviction that had the lowest number on the charging instrument," and "[choosing] the offense that was alleged first in the indictment." *Pena*, 820 S.W.2d at 808. It cited several policy justifications for the new rule, including that "it does not attempt to make arbitrary distinctions based on which allegations or conviction preceded the others," ensuring that "the outcome of a case will not depend on the coincidence of the order of offenses in an indictment or jury charge." *Id.* at 808.

Recently, the court of criminal appeals saw fit to clarify the application of what it termed the "most serious offense" test of *Landers*. *Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006); *cf. id.* at 339-40 (Keller, P.J., concurring). It expressed concern that a standard based on "the degree of the felony, the range of punishment and the sentence imposed, with rules of parole eligibility and good conduct time as a tie-breaker" could be difficult to apply and subjective. *Cavazos*, 203 S.W.3d at 337-38. The court instead adopted a test based primarily on the fact-finder's discretion: "the 'most serious' offense is the offense of conviction for which the greatest sentence was assessed." *Id.* at 338. The court added, "To the extent that *Landers* holds that other factors, such as the degree of the felony, range of punishment, and rules governing parole eligibility and awarding of good-conduct time, shall be used in that determination, it is overruled." *Id.*

Having clarified the nature of the "most serious" offense test, *Cavazos* applied it to two convictions arising from the same incident, burglary of a habitation with intent to commit theft and burglary of a habitation with intent to commit sexual assault, for each of which the defendant

11

had been sentenced to a 25-year term. In that situation, the court found a tie-breaker in the imposition of restitution for only one of the offenses (burglary with intent to commit theft), because "restitution is punishment." *Id*. Having concluded that the "punishment assessed makes the burglary with intent to commit theft conviction the 'most serious' offense," the court did not need to proceed further, but noted the following in a footnote:

> Some of our case law suggests that, all other factors being equal, the conviction that should be affirmed is the offense named in the first verdict form. *See*, *e.g.*, *Ex parte Cravens*, 805 S.W.2d 790 (Tex. Crim. App. 1991); *McIntire v. State*, 698 S.W2d 652 (Tex. Crim. App. 1985); *Ex parte Siller*, 686 S.W.2d 617 (Tex. Crim. App. 1985). Generally, this will be the offense described in Count I of the indictment. We do not address that question today.

*Id*. at 339 n.8. *Cravens*, *McIntire*, and *Siller* were each misjoinder cases that predated *Pena*.

The present case squarely presents the question that *Cavazos* left unaddressed. Here, we are confronted with two identical 60-year sentences in two written judgments of conviction. The only difference between the two judgments is that robbery is listed as a "second degree felony enhanced to [a] first degree felony," while aggravated robbery is listed as a "first degree felony." Unlike *Cavazos*, no restitution was ordered for either conviction.

The State suggests that we retain the aggravated robbery as the "most serious" offense because, absent enhancement, a first-degree felony has a broader range of punishment than a second-degree felony. *See* Tex. Penal Code Ann. §§ 12.32(a), 12.33(a) (West 2003). We also note that robbery is a lesser-included offense of aggravated robbery. *Ex parte Walton*, 626 S.W.2d 528, 530 (Tex. Crim. App. 1981); *see* Tex. Penal Code Ann. §§ 29.02, 29.03. Having given effect to the fact-

12

finder's discretion as the primary determinant of the "most serious" offense, and restitution not being

a tie-breaker here, the underlying rationale of *Cavazos* arguably would not foreclose our reliance on

these objective factors. However, as an intermediate appellate court, we must take the highest

criminal court of our state at its words: "[t]o the extent that *Landers* holds that other factors such

as the degree of the felony, range of punishment, and rules governing parole eligibility and awarding

of good-conduct time, shall be used in that determination [of the "most serious" offense], it is

overruled." Nothing in the factual or procedural context of *Cavazos* gives us comfort that we should

disregard as distinguishable the high court's literal words or the court's broad criticism of

the *Landers* criteria.[4]

Cavazos does not, however, preclude us from employing the alternative principle that

"the conviction that should be affirmed is the offense named in the first verdict form."

203 S.W.3d at 339 n.8. Although *Pena* eventually rejected this approach as "arbitrary" when used

as a primary governing principle for determining which of two or more misjoined convictions to

uphold, 820 S.W.2d at 809, *Pena*'s rationale does not necessarily foreclose this approach when our

application of the "most serious" offense or punishment test yields an indeterminate conclusion.

---

[4] It is curious that the court prefaced its discussion of restitution as a tie-breaker by observing that "*the degree of the offense of conviction* and the term of years assessed by the fact finder are the same." *Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006) (emphasis added). The significance of the court's reference to the degree of the offense is unclear, but it does not alter our conclusion.

Accordingly, unless and until the court of criminal appeals instructs us otherwise, we will retain the offense described in the first verdict form and count one of the indictment—robbery—and vacate Williams's conviction for aggravated robbery.

## CONCLUSION

The district court rendered two written judgments of conviction, one for each of the two offenses for which appellant was convicted. The judgment of conviction for aggravated robbery is vacated. The judgment of conviction for robbery is affirmed.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Patterson and Pemberton;
    Concurring and Dissenting Opinion by Justice Patterson

Affirmed in part; Vacated in part

Filed:   June 1, 2007

Publish

14