# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00482-CR

**Melvin Auston, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D-1-DC-11-300068, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Melvin Auston guilty of aggravated robbery of a person sixty-five years of age or older. *See* Tex. Penal Code § 29.03(a)(3)(A). After finding that Auston had previously been convicted of a felony, the trial court sentenced Auston to fifty years' imprisonment. On appeal, Auston asserts that (1) the trial court erred in failing to instruct the jury that a witness was an accomplice as a matter of law and (2) the evidence is insufficient to support the jury's finding that Auston used a deadly weapon. We reform the trial court's judgment to delete the deadly-weapon finding and affirm the judgment as modified.

## BACKGROUND

Jimmie Frances Willes, the complaining witness in this case, was eighty years old at the time of this alleged offense. Willes testified that she was driving home from the grocery store

when she noticed an SUV following her from the store's parking lot. When Willes pulled into her driveway, the SUV parked beside her car and a man—later identified as Auston—exited the SUV.

According to Willes, Auston squatted down next to her open driver-side door, showed her a "gun," and said "I have a gun, hand me that purse over there." Willes explained that she was shocked that this was happening in her neighborhood and initially she did not want to give Auston her purse. Auston again stated that he had a gun, and then said something to the effect of "Don't kid yourself, I will shoot." Willes indicated that she had a very vivid memory of the gun, and she recalled that it "was small and it was gray and the barrel was a little bit square looking rather than round. That made me wonder if it was a real gun." Willes thought that the gun "must be a toy" because of its size, shape, and color. Willes reached toward her purse, but she was not sure if she was actually going to give the purse to Auston. Finally, Auston reached past Willes, grabbed the purse from the passenger-side seat, got back in the SUV, and drove away.

Willes wrote down the last four digits of the SUV's license-plate number and then called the Austin Police Department (APD) to report the robbery. A few days later, Willes learned that someone in Bryan/College Station, Texas was forging checks from the checkbook that was in her stolen purse. She notified Detective Roger Boudreau—the APD officer assigned to this case—and Boudreau determined that eight of the forged checks had been deposited into Auston's account. Detective Boudreau contacted Detective Michael Lundy with the City of College Station Police Department for assistance in the investigation. Detective Lundy learned that Auston was living with Rundar Williams in a local hotel. Detective Lundy determined that a Ford SUV with a license-plate number that matched the last four digits of the suspect vehicle was registered to

Williams. Based on this information, Detective Boudreau obtained arrest warrants for Auston and Williams as well as search warrants for their hotel room and SUV.

Detective Lundy executed the warrants, and after arresting Auston and Williams, he recovered Willes's purse, bank card, driver's license, and other belongings from the hotel room and SUV. Detective Lundy also recovered a "Powerline .117-caliber" BB pistol from the room's trash can, which the State later alleged was the weapon used in the robbery. Williams cooperated with the police investigation. She testified that she was driving the SUV on the day of the robbery, identified Auston as the person who committed the robbery, and corroborated Willes's narration of the events of the robbery in most respects.[1]

Auston was indicted for aggravated robbery. *See* Tex. Penal Code § 29.03(a)(3)(A) (enhancing robbery to aggravated robbery if victim is sixty-five years of age or older). Willes, Williams, and Detectives Boudreau and Lundy testified about the events outlined above. The jury found appellant guilty of the offense alleged and entered an affirmative finding that Auston used or exhibited a deadly weapon—a BB gun—during the commission of the offense. The trial court assessed punishment as outlined above. This appeal followed.

## DISCUSSION

Auston raises two issues on appeal. First, Auston complains that the trial court erred in failing to instruct the jury that Williams was an accomplice as a matter of law. Second, Auston

---

[1] The only significant discrepancy between Willes's and Williams's description of the robbery was that Williams testified that Auston robbed Willes after she had already gotten out of her car, while Willes testified that she was still sitting in the driver-side seat.

3

asserts that the evidence is insufficient to support the jury's finding that he used or exhibited a deadly weapon during the course of the robbery. We discuss each appellate issue separately.

**Accomplice-as-a-matter-of-law jury instruction**

In his first issue on appeal, Auston complains that the trial court erred in failing to instruct the jury that Williams was an accomplice as a matter of law. Specifically, Auston claims that the undisputed evidence established that Williams was an accomplice to the robbery, and thus the jury should have been instructed that it could not convict Auston on Williams's testimony alone. *See* Tex. Code Crim. Proc. art. 38.14 (requiring accomplice testimony to be "corroborated by other evidence tending to connect the defendant with the offense").

Our review of an alleged error in a jury charge involves a two-step inquiry. First, we determine whether there was in fact error in the jury charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). Second, assuming that error existed, we determine whether the defendant properly preserved the error at trial. *Id.* at 350 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). If the error was properly preserved, reversal is required if there is "some harm" to the defendant. *Almanza*, 686 S.W.2d at 171. However, if the error was not properly preserved, the error must be "fundamental," meaning that it was "so egregious and created such harm that the defendant 'has not had a fair and impartial trial.'" *Barrios*, 283 S.W.3d at 350 (quoting *Almanza*, 686 S.W.2d at 171).

Williams was indicted for the underlying robbery, and therefore she was an accomplice as a matter of law. *See Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011) ("A witness who is indicted for the same offense . . . as the accused is an accomplice as a matter of law."). Thus, as the State concedes, the trial court erred in failing to instruct the jury about Williams's status as

4

an accomplice. *See id.* ("When the evidence clearly shows . . . that a witness is an accomplice as a matter of law, the trial judge must instruct the jury accordingly."). Auston did not request an accomplice-as-a-matter-of-law instruction at trial. Therefore, we will reverse Auston's conviction only if the failure to provide the accomplice-as-a-matter-of-law instruction was fundamental error which was so harmful that it deprived Auston of a fair trial. *See Barrios*, 283 S.W.3d at 350.

Although the trial court did not instruct the jury that Williams was an accomplice as a matter of law, it did instruct the jury on the law of accomplice testimony, reciting the language of article 38.14 verbatim. *See* Tex. Code Crim. Proc. art. 38.14. Williams testified that she had been indicted for her part in the robbery and she admitted that she and Auston planned and executed the robbery together. Furthermore, both the State and Auston's trial counsel repeatedly stated that Williams was an accomplice during closing arguments. Based on this record, any reasonable juror would have concluded that Williams was an accomplice and applied the trial court's instruction on accomplice testimony accordingly. *See DeBlanc v. State*, 799 S.W.2d 701, 710–11 (Tex. Crim. App. 1990) ("Given the unrefuted, unquestioned evidence that [the witness] was an active participant in the murder . . . only an unreasonable jury would find that the State's witness was not an accomplice . . . ."). Therefore, we conclude that any error in failing to instruct the jury that Williams was an accomplice as a matter of law was not egregiously harmful. *See id.* We overrule Auston's first appellate issue.

**Deadly-weapon finding**

In his second issue on appeal, Auston asserts that the evidence is insufficient to support the jury's affirmative finding that he used a deadly weapon during the commission of this

offense. Specifically, Auston complains that there was no testimony that the BB pistol in this case was capable of causing death or serious bodily injury. Therefore, according to Auston, the State failed to meet its burden of proving that the BB pistol was in fact deadly.

Although not an element of the aggravated robbery in this case, "an affirmative deadly weapon finding has a negative impact on a defendant's eligibility for community supervision, parole, and mandatory supervision." *Sierra v. State*, 280 S.W.3d 250, 254 (Tex. Crim. App. 2009). We will sustain a deadly-weapon finding if a rational fact finder could find beyond a reasonable doubt that the defendant used or exhibited a deadly weapon during the commission of a felony. *See id.* at 254. In reviewing the sufficiency of the evidence to support a deadly-weapon finding, we consider all of the evidence in the light most favorable to the jury's verdict. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

A deadly weapon is defined as "a firearm or anything designed, made or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17). To sustain a deadly weapon finding, the evidence must be sufficient to establish that (1) the object meets the statutory definition of a deadly weapon; (2) the deadly weapon was used or exhibited "during the transaction from which" the felony conviction was obtained; and (3) other people were endangered. *See Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). In this case, the only issue is whether the BB pistol that Auston used meets the statutory definition of deadly weapon.

A BB gun is not a "firearm" within the meaning of the Penal Code, and thus it is not a deadly weapon per se. *See Adame v. State*, 69 S.W.3d 581, 582 (Tex. Crim. App. 2002). Whether

6

a BB gun qualifies as a deadly weapon in a particular case is a fact-specific inquiry. *See Menchaca v. State*, No. 03-06-00332-CR, 2007 WL 2214572, at *5 (Tex. App.—Austin Aug. 2, 2007, pet. ref'd) (mem. op., not designated for publication) (listing cases in which BB gun was found to be deadly weapon and cases in which it was not). The State may prove that a BB gun is a deadly weapon through several means, including lay or expert testimony that the weapon is capable of causing serious bodily injury. *See, e.g.*, *Adame*, 69 S.W.3d at 581 (affirming deadly-weapon finding where police testified BB gun could cause serious bodily injury if pointed and fired at someone); *Campbell v. State*, 577 S.W.2d 493, 495–96 (Tex. Crim. App. 1979) (discussing expert ballistic testimony about potential harm from BB gun); *Williams v. State*, 240 S.W.3d 293, 299 (Tex. App.—Austin 2007, no pet.) (noting that State introduced warning label for air gun that identified risk of serious injury or death).

In this case, there was no testimony from any witness about the potential danger from the BB pistol that Auston used. For example, neither Detective Boudreau nor Detective Lundy testified that in their experiences, BB guns are capable of causing serious bodily injury. Similarly, although Williams and Willes testified that Auston pointed the BB pistol at Willes, neither witness indicated that Auston pointed the weapon at Willes's face or any other part of her body that a juror might reasonably know was susceptible to serious injury. *Cf. Morales v. State*, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982) (noting that with respect to knife wounds, it is common knowledge that throat is particularly vulnerable part of body). There was no indication that Auston threatened to bludgeon Willes with the pistol. Finally, there is nothing in the record to indicate that the jury could reasonably infer that the BB pistol was capable of causing serious bodily injury by its appearance

7

alone. In fact, Willes's own testimony supports an inference that the BB pistol was so small and obviously fake that she debated not surrendering her purse during the robbery.

The State asserts that the jury could have reasonably inferred that the BB pistol was a deadly weapon because, if fired, it could have hit Willes in the eye. As we have noted, there was no testimony in the record from which it can be inferred that Auston pointed the weapon at Willes's face. Furthermore, there is nothing in the record to indicate that BB guns in general—or this BB pistol in particular—are capable of causing death, "serious permanent disfigurement, or protected loss or impairment of the function of any bodily member or organ" whenever they are pointed at people. *See* Tex. Penal Code 1.07(a)(46) (defining serious bodily injury).

Although it might be true that all BB guns are capable of causing serious bodily injury whenever they are pointed at someone, this is not the kind of general knowledge that we would expect all jurors to know through common experience. *Cf. Morales*, 633 S.W.2d at 868; *see also Mosley v. State*, 545 S.W.2d 144, 145 (Tex. Crim. App. 1976) (concluding that evidence was insufficient to establish BB gun was a deadly weapon). Therefore, the State was required to introduce some evidence that the manner in which Auston used or intended to use the BB pistol in this case made the weapon capable of causing serious bodily injury. Having failed to do so, we must conclude that the evidence is insufficient to support the jury's finding that Auston used or exhibited a deadly weapon.

Given that the use of a deadly weapon was not an element of the aggravated robbery in this case and does not affect the applicable punishment range, the appropriate remedy is to delete the deadly-weapon finding. *See Narron v. State*, 835 S.W.2d 642, 644 (Tex. Crim. App. 1992).

8

Therefore, we sustain Russell's second appellate issue, delete the affirmative deadly-weapon finding from the trial court's judgment of conviction, and affirm the judgment as modified.

## CONCLUSION

We modify the trial court's judgment of conviction to delete the deadly-weapon finding and affirm the judgment as modified.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Modified and, as Modified, Affirmed

Filed:   March 27, 2014

Do Not Publish