

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00028-CR
_____

KENDRICK LAMAR HILL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 20F0097-202

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Justice Stevens

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

A Bowie County jury convicted Kendrick Lamar Hill of aggravated robbery. After it found the State's punishment enhancement allegation true, the jury assessed a sentence of life imprisonment and a fine of $10,000.00.[1] In his sole point of error on appeal, Hill argues that the evidence is insufficient to support the jury's finding that the BB gun used by Hill during the commission of the crime was a deadly weapon. Based on the Texas Court of Criminal Appeals opinion in *Adame v. State*, 69 S.W.3d 581, 581 (Tex. Crim. App. 2002), we conclude that legally sufficient evidence established that the BB gun was a deadly weapon. As a result, we affirm the trial court's judgment.

## I.      The Evidence at Trial

The evidence at trial showed that an E-Z Mart was robbed of $78.00 by a perpetrator that pointed a weapon at the clerk, Michael Scott. Jacob Meadows, an officer with the Nash Police Department, spoke with Scott after the robbery. According to Meadows, Scott, who was "very rattled and distraught," believed that the robber had used a handgun. Scott testified that the weapon, which "looked like a Beretta," was capable of causing serious bodily injury or death and that he was placed in fear of imminent bodily injury or death when it was "in [his] face." Meadows testified that surveillance footage from the store showed that the robber had "pulled a [weapon], demanded money[,] [Scott] gave him money, and then [the robber] fled the scene."

---

[1]At punishment, the State introduced evidence showing that Hill's criminal history reflected seventeen offenses, including convictions for burglary of a habitation, burglary of a building, burglary of a vehicle, theft of a firearm, unlawful possession of a firearm by a felon, assault, and evading arrest.

The surveillance video shown to the jury clearly depicted the robber brandishing the weapon and pointing it at Scott.

The robber was easily identified as Hill because of clear surveillance footage and the fact that Hill had a conversation with Kerry Manning, an off-duty lieutenant supervisor who knew Hill, in the E-Z Mart parking lot before the robbery. Christopher Dunn, Hill's acquaintance, testified that Hill visited him on the day of the robbery, appeared "[s]kittish," left at one point during the night, and gave Dunn "a weird vibe" when he returned. Dunn testified that Hill had "[a] little bit of money" and that he found what appeared to be a "pistol the next day under [his] porch." Dunn told Hill to leave his house when he learned about the robbery.

The weapon recovered at Dunn's home was not an actual Beretta. Michael Sutton, an investigator with the Nash Police Department, testified that the recovered weapon was "an air pistol or a $CO_2$ pistol" that fired BBs. Sutton said that Berretta manufactured Hill's BB gun and that information provided from them specified that a projectile used in the BB gun could travel 395 feet per second, which was roughly equivalent to 269.318 miles per hour. According to Sutton, "[t]he velocity of this gun [was] very well capable of putting an eye out or causing any other damage to the eye" and could result in the loss of that organ. Sutton then testified that his review of surveillance footage showed that Hill and Scott were within two to three feet from each other and that Hill pointed the BB gun at Scott's head and upper body. Based on his training as a police officer and his personal experience, Sutton testified that the BB gun was capable of causing serious bodily injury.

After hearing this evidence, the jury convicted Hill of aggravated robbery.

## II. Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Davis v. State*, 614 S.W.3d 223, 229 (Tex. App.—Texarkana 2020, no pet.) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous legal sufficiency review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* at 229–30 (quoting *Malik*, 953 S.W.2d at 240).

A person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places

4

another in fear of imminent bodily injury or death." TEX. PENAL CODE ANN. § 29.02(a)(2). A person commits aggravated robbery "if he commits robbery . . . and he . . . uses or exhibits a deadly weapon[.]" TEX. PENAL CODE ANN. § 29.03(a)(2). Here, the indictment alleged that Hill "on or about <u>November 6, 2019,</u> . . . while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten[ed] or place[d] <u>Michael Scott</u> in fear of imminent bodily injury or death, and . . . use[d] or exhibit[ed] a deadly weapon."

In his sole point of error, Hill argues that the evidence was insufficient to establish that the BB gun was a deadly weapon. A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46).

## III.    Analysis

A BB gun is not a "firearm" or a "deadly weapon" per se. *Adame*, 69 S.W.3d at 582. As a result, we must decide whether the evidence was sufficient to show that Hill's BB gun was "capable of causing death or serious bodily injury" "in the manner of its use or intended use." TEX. PENAL CODE ANN. § 1.07(a)(17)(B).

In *Adame*, the Texas Court of Criminal Appeals determined that evidence of Adame's use of a BB gun during a convenience store robbery was sufficient to support the jury's deadly-

weapon finding because (1) the store clerk testified that she feared for her life when the defendant pointed the weapon at her and (2) a police investigator testified that Adame's BB gun "could cause serious bodily injury if it were pointed and fired at someone." *Adame*, 69 S.W.3d at 581. In so ruling, the Texas Court of Criminal Appeals rejected Adame's argument that the State failed to prove that the BB gun was loaded. *Id.* at 582. It found that, whether a BB gun is loaded is not significant; instead, what is significant is whether there is evidence presented that the BB gun is capable of causing serious bodily injury. *Id.* The Texas Court of Criminal Appeals reiterated that, "[w]ith testimony that a BB gun is capable of causing serious bodily injury, it is reasonable for a jury to make a deadly weapon finding." *Id.*; *see also Williams v. State*, 240 S.W.3d 293, 299 (Tex. App.—Austin 2007, pet. ref'd).

Hill argues that "the evidence merely proved BB guns of the same model are capable of inflicting serious bodily injury but was silent as [to] the specific BB Gun the State tied to Appellant." We disagree with Hill's characterization of the evidence. The jury was able to view the surveillance footage showing that Hill pointed the weapon toward Scott's face while in close proximity to him. As in *Adame*, Scott testified that he feared bodily injury or death when the weapon was pointed "in [his] face," and Sutton testified, during questioning about the BB gun used by Hill, that the weapon was capable of causing serious bodily injury because "[t]he velocity of *this gun* is very well capable of putting an eye out or causing any other damage to the eye." (Emphasis added).

Even so, Hill argues that nothing showed that Hill's gun had the same velocity as listed in the information provided by the manufacturer. In other words, Hill believed that the State was

required to prove that his gun was "***in proper working order and loaded with ammunition***." In

*Adame*, the Texas Court of Criminal Appeals wrote the following:

> [I]n cases like this, where during a convenience store robbery a defendant threatens serious bodily injury to the convenience store clerk by pointing a BB gun at her, a jury may rationally infer that the BB gun is loaded. *See Delgado v. State*, 986 S.W.2d 306, 308 (Tex. App.—Austin 1999, no pet.) (jury could rationally infer that defendant's pistol was loaded from evidence that defendant brandished it, pointed it at robbery victims and threatened to kill them). It is reasonable to infer that defendants use loaded guns to facilitate convenience store robberies. It is not necessary, however, to place an additional evidentiary burden on the State to affirmatively prove that a BB gun, which is not a deadly weapon per se, was loaded at the time of the commission of the offense. Rather, in proving use of a deadly weapon other than a deadly weapon per se, the State need show only that the weapon used was capable of causing serious bodily injury or death in its use or intended use.

*Adame*, 69 S.W.3d at 582. We reject Hill's argument that the State was required to prove, with

additional evidence than was presented at trial, that his BB gun "was in proper working order

and loaded with ammunition" because it places an additional evidentiary burden on the State and

runs afoul of *Adame*. *See id.* Also, Hill's BB gun was manufactured by Baretta, was used during

the offense, and was admitted into evidence for the jury's examination. Hill has failed to point

us to authority showing why this evidence, combined with Sutton's testimony about the velocity

and capabilities of "*this gun*," would not be sufficient to allow the jury to infer that Hill's BB

gun was loaded and in working order. *See id.*

Based on the facts of this case, we find the evidence sufficient to support the jury's

finding that the BB gun was a deadly weapon. *See id.*; *Williams*, 240 S.W.3d at 299. As a result,

we overrule Hill's sole point of error.

7

## IV.    Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:    November 29, 2021
Date Decided:      December 6, 2021

Do Not Publish