# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

**NO. 03-23-00066-CR**
**NO. 03-23-00067-CR**
**NO. 03-23-00068-CR**
**NO. 03-23-00069-CR**
**NO. 03-23-00070-CR**
**NO. 03-23-00071-CR**
**NO. 03-23-00072-CR**

---

**David Cardenas, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 460TH DISTRICT COURT OF TRAVIS COUNTY**
**NOS. D-1-DC-19-300970, D-1-DC-19-200137, D-1-DC-19-200136, D-1-DC-19-200138,**
**D-1-DC-19-200139, D-1-DC-19-300991, D-1-DC-19-302100,**
**THE HONORABLE SELENA ALVARENGA, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant, David Cardenas, pleaded guilty to the offenses of burglary of a habitation (committed at four separate residences), aggravated robbery, robbery, and aggravated assault causing serious bodily injury and was placed on deferred-adjudication community supervision. Following a hearing on the State's motion to adjudicate, the district court adjudicated him guilty and sentenced him to twenty years' imprisonment for each offense. In two issues on appeal, Cardenas asserts that the district court abused its discretion by revoking his deferred-adjudication community supervision and that each judgment contains a clerical error

that requires correction. We will modify the judgments to correct the clerical error and affirm the judgments as modified.

## BACKGROUND

Cardenas allegedly committed several crimes in 2019. The State first charged Cardenas in four separate indictments with the offense of burglary of a habitation, alleging in each indictment that on or about January 6, 2019, Cardenas intentionally and knowingly entered a habitation without the effective consent of the owner and committed theft. The State next charged Cardenas with aggravated robbery, alleging that on or about May 23, 2019, Cardenas, while committing theft, intentionally and knowingly threatened and placed the victim in fear of imminent bodily injury and death using a deadly weapon, specifically a power drill with a long drill bit. Later, the State charged Cardenas with robbery, alleging that on or about May 22, 2019, Cardenas, while committing theft, intentionally and knowingly threatened and placed the victim in fear of imminent bodily injury and death. Finally, the State charged Cardenas with aggravated assault causing serious bodily injury, alleging that on or about November 1, 2019, Cardenas intentionally, knowingly, and recklessly caused serious bodily injury to the victim by striking him on or about the head with an unknown object, a sock filled with a bar of soap, and a sock filled with an unknown object. On March 22, 2021, Cardenas pleaded guilty to each offense and was placed on ten-years deferred-adjudication community supervision for each.

On November 4, 2021, the State filed a motion to proceed with an adjudication of guilt in each case, alleging that Cardenas had violated the terms and conditions of his deferred adjudication by, among other things, committing the subsequent criminal offense of aggravated robbery. The trial court held a hearing on the motion to adjudicate, at the conclusion of which

2

the district court found that Cardenas had violated the terms of his deferred adjudication as alleged, revoked his community supervision, and sentenced him to twenty years' imprisonment for each offense as noted above. This appeal followed.

## STANDARD OF REVIEW

We review a trial court's decision to adjudicate guilt and revoke community supervision for abuse of discretion. *See Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); *see also* Tex. Code Crim. Proc. art. 42A.108(b). A trial court abuses its discretion in revoking community supervision when the State fails to meet its burden of proof regarding a violation of community supervision. *Cardona*, 665 S.W.2d at 493. However, "proof of a single violation will support revocation." *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012) (citing *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980)).

"In determining questions regarding sufficiency of the evidence in probation revocation cases, the burden of proof is by a preponderance of the evidence." *Rickels*, 202 S.W.3d at 763. That burden is met when the greater weight of the credible evidence before the court creates a reasonable belief that the defendant has violated a condition of community supervision as alleged. *See Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Rickels*, 202 S.W.3d at 764. We must view the evidence in the light most favorable to the trial court's decision, *see Browder v. State*, 109 S.W.3d 484, 490 (Tex. Crim. App. 2003), mindful that "the trial judge is the sole judge of the credibility of the witnesses and the weight to be given to their testimony," *Hacker*, 389 S.W.3d at 865. Additionally, "[a]ppellate courts are not

3

permitted to use a 'divide and conquer' strategy for evaluating sufficiency of the evidence" and "must consider the combined and cumulative force of all the evidence." *Id.* at 873.

## DISCUSSION

### Commission of subsequent offense

In his first issue, Cardenas asserts that the State failed to prove by a preponderance of the evidence that he committed the offense of aggravated robbery as alleged in the motion to adjudicate. A person commits the offense of aggravated robbery if, while "in the course of committing theft . . . and with intent to obtain or maintain control over the property," he "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death" and "uses or exhibits a deadly weapon" during the commission of the offense. Tex. Penal Code §§ 29.02(a)(2), .03(a)(2). In its motion to adjudicate, the State alleged that Cardenas:

> Committed a subsequent criminal offense in that on or about the 19th day of October, 2021, in the County of Travis, State of Texas, David Cardenas, did then and there while in the course of committing theft and with intent to obtain property of [named victims] to wit: phones, US currency and jewelry, without the effective consent of the said [named victims] and with intent to deprive the said [named victims] of said property, did then and there by using and exhibiting a deadly weapon, to wit: handgun and knife intentionally and knowingly threaten [named victims] with imminent bodily injury or death.

### *Evidence presented*

The victims who testified at the adjudication hearing were husband and wife Gabriel and Daria Martinez. Daria testified that on October 19, 2021, she was at home in her apartment, cooking with her mother, when she went to the front door to meet Gabriel and her father, who were coming home from work. As Daria was closing the door, two men "forced their way in and pushed [Daria] against a wall," causing her to hit her elbow. Daria described

one of the men as "really tall and thin," while the other man "was more burly." The men were wearing black masks, so Daria could not see their faces, and she could not remember the clothing they were wearing. The "shorter guy" was holding a firearm while the taller man had a knife. Daria testified that the men pointed the weapons at the people inside the apartment (Daria, Gabriel, Daria's mother, her father, and her son), led them into the living room, and "shoved [them] onto the floor." The men then took away their phones and the money that Gabriel and Daria's father had on them. After that, the men took the family into a bedroom, where they encountered Daria's younger brother. The men asked him for money, but the family told the men that the younger brother was "just a student" and "didn't have any money," so the men "locked [the family] in the bedroom and went and tore apart another bedroom looking for money." Daria's father eventually "went through the window to get help from a neighbor and have them call the police," but "by the time the police arrived, [the robbers] had already left."

Gabriel testified that the men "kicked the door so hard" when they entered the apartment "that they threw [Daria] against the wall," injuring her arm. The men were "demanding things of value," and the only thing of value that Gabriel and his father-in-law had on them was $160 in cash that each had earned that day from work. The men took the money and their phones from them. Gabriel recalled that one of the men was holding "a revolver type" firearm, while the other man was holding "a short knife." Gabriel was afraid that the men might use the weapons on them because they had already thrown the family to the ground, including Gabriel's four-year-old son. Gabriel described one of the men as "taller and skinny" and the other as comparable to Gabriel's height but "less fat" than Gabriel. Gabriel testified that he was

5

1.69 meters tall and weighed 220 pounds.[1]  Gabriel did not see the men's faces during the robbery.

APD officer Nikolas Warren, who coordinated the response of the violent crimes task force (VCTF) to the robbery, testified that he had been provided with information about the crime, including descriptions of one of the suspects and the vehicle that was used to leave the scene.  The suspect was described as a "Hispanic male, approximately five foot nine and 250 pounds," and the vehicle was described "as a white 2001 Mercury Grand Marquis that had Texas license plate FVX1100."  Warren researched and reviewed reports involving that vehicle and learned that "the registered owner allowed her grandson to use the car."  Warren identified the owner's grandson as Cardenas and learned that he did not have a driver's license, only a suspended Texas identification card.  Warren found photographs of Cardenas and provided those photographs to other VCTF officers, one of whom later observed Cardenas "coming out of an apartment and coming towards the white Mercury."  Warren directed the VCTF to "follow that car and eventually conduct a takedown."

APD officer Daniel Wind participated in the takedown.  Wind testified that officers located the vehicle at the apartment building of Cardenas's grandmother,[2] followed the vehicle when Cardenas got inside the car and drove away, and stopped the vehicle when Cardenas pulled in front of his mother's house.  Wind searched the vehicle after it was stopped.  Inside the vehicle, Wind found a brown bag, a blue bandana and "Jordan shoes" that were

[1]  We take judicial notice that 1.69 meters is equivalent to approximately 5.5 feet.

[2]  A photograph admitted into evidence showed the car parked in front of a dumpster at the apartment building, and Cardenas can be seen in the photo climbing out of the dumpster. Wind testified that "[w]hile conducting covert surveillance, Mr. Cardenas was observed by one of our members of the team driving to the dumpsters, getting into the dumpster with what looked like—was throwing away items and then climbing out."

6

suspected to have been worn by one of the robbers, a razor blade, and a folding knife. Photos of these items were admitted into evidence. Another officer found a cell phone belonging to Cardenas that Cardenas had dropped outside the vehicle.

APD officer Brendan Schwanky was the lead detective assigned to the case. Schwanky testified that he reviewed surveillance-video footage from the victims' next-door neighbors that showed the suspect vehicle parked outside the residence and two men approaching the residence. Still photos from that footage were admitted into evidence. In one of the photos, one of the men can be seen wearing a blue bandana and "white shoes with a black line around the side," which was similar to the description of the shoes found inside the suspect vehicle. After identifying the owner of the vehicle, Schwanky spoke to that person and learned that Cardenas "had the vehicle at the time of the robbery." Schwanky explained that this made Cardenas "a prime suspect" in the robbery:

> I looked at his physical descriptors, which matched the description of a larger Hispanic male suspect. And due to the grandmother indicating that he had the vehicle at the time of the robbery and was the only other person who had access to that vehicle, yes, he became a prime suspect at that time.

Schwanky interviewed Cardenas following his arrest. Schwanky testified that Cardenas "admitted to having the vehicle that day" and "stated that he's the only person that was driving the vehicle that day." However, Cardenas claimed that "around dusk, when it was getting dark out," he parked the car to purchase marijuana, that he left the keys in the vehicle, and that the vehicle was stolen at that time. Schwanky informed Cardenas that the robbery was committed "in broad daylight well before" he claimed that the vehicle was stolen, and Cardenas responded by accusing Schwanky of photoshopping the photos of the robbery. Schwanky

7

testified that he did not find Cardenas's story to be credible. On cross-examination, Schwanky acknowledged that no stolen property was recovered from Cardenas, the vehicle in which he was stopped, or the dumpster out of which Cardenas was seen climbing.

*Analysis*

Cardenas contends that the above evidence is insufficient to prove that he was one of the alleged offenders, that he stole either jewelry or phones from the victims, or that he used both a handgun and a knife during the robbery. The State responds that sufficient circumstantial evidence proved that Cardenas committed the offense and that the State was not required to prove each "manner and means" by which Cardenas might have committed the offense.

We agree with the State. Regarding Cardenas's identity as one of the robbers, "circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone may be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013). Additionally, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support" the finding of guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Here, the vehicle that was used to commit the robbery was owned by Cardenas's grandmother, who told the police that Cardenas was in possession of the vehicle at the time of the robbery. Cardenas, in his interview with the police, "admitted to having the vehicle that day" and "stated that he's the only person that was driving the vehicle that day." Although Cardenas claimed that the vehicle had been stolen later in the day, "around dusk, when it was getting dark," the district court as factfinder was entitled to disbelieve this claim, particularly considering evidence showed that the robbery occurred during

8

daylight and that Cardenas was found in possession of the vehicle after he claimed it was stolen. Moreover, police found the vehicle in front of a dumpster, and Cardenas was seen climbing out of that dumpster before entering the vehicle and driving away. Additionally, when Cardenas was stopped by police, a blue bandana and shoes were found inside the vehicle that he was driving, and these items matched the description of items that were worn by one of the robbers in surveillance video footage of the robbery. A folding knife that might have been used during the robbery was also found inside the vehicle. Viewing the combined and cumulative force of the evidence in the light most favorable to the district court's finding, we conclude that it is sufficient by a preponderance of the evidence to prove Cardenas's identity as one of the robbers.

Regarding Cardenas's contention that the State failed to prove that he robbed the victims of jewelry and their phones, it is well established "[t]he State is allowed to anticipate variances in the proof by pleading alternative 'manner and means' in the conjunctive when proof of any one 'manner or means' will support" a finding a guilt. *Lehman v. State*, 792 S.W.2d 82, 84 (Tex. Crim. App. 1990). "By so pleading, the State does not bind itself to proving any larger quantum of proof than the statute in question requires." *Alva v. State*, 797 S.W.2d 957, 958 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd). "Where the proof shows commission of an offense by any one of the 'manner and means' alleged in the motion to revoke, no fatal variance between pleading and proof will be found." *Id*.

Here, the State alleged that Cardenas committed the robbery with intent to obtain "phones, US currency and jewelry." Each item of property was an alternative "manner and means" of committing the alleged offense. *See Lehman*, 792 S.W.2d at 84-85. Although there was no evidence regarding any jewelry, Daria and Gabriel testified that the robbers "took away" cash and phones belonging to Gabriel and his father-in-law. This evidence was sufficient to

9

support the district court's finding by a preponderance of the evidence that Cardenas committed the robbery offense as alleged.[3]

Finally, we cannot conclude that any failure of proof regarding the weapon that Cardenas allegedly used during the commission of the offense entitles Cardenas to reversal of his adjudication. Even when evidence is insufficient to prove that a person committed an alleged offense, a trial court may still revoke community supervision if the evidence is sufficient to prove that the person committed a lesser-included offense. *See Horton v. State*, 621 S.W.2d 632, 633 (Tex. Crim. App. 1981); *Barnes v. State*, 467 S.W.2d 437, 440 (Tex. Crim. App. 1971); *Greer v. State*, 783 S.W.2d 222, 224 (Tex. App.—Dallas 1989, no pet.).

Robbery is a lesser-included offense of aggravated robbery. *See Little v. State*, 659 S.W.2d 425, 425–26 (Tex. Crim. App. 1983); *Williams v. State*, 240 S.W.3d 293, 299 (Tex. App.—Austin 2007, no pet.). "The elements of these offenses are the same except that aggravated robbery requires an additional finding that the defendant used or exhibited a deadly weapon." *Penaloza v. State*, 349 S.W.3d 709, 711 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (citing Tex. Penal Code §§ 29.02, .03). Thus, assuming without deciding that the State failed to prove that Cardenas used a deadly weapon during the commission of the offense,[4] the

---

[3] Cardenas also contends that there is no evidence that Cardenas "kept" the phones that he took from the victims. However, proof of a completed theft is not required to support a finding that a person committed the offense of robbery. *See Ex parte Lucas*, 574 S.W.2d 162, 164 (Tex. Crim. App. 1978).

[4] Although a firearm is a deadly weapon per se, a knife may or may not be a deadly weapon, depending on its manner of use or intended use. *See* Tex. Penal Code 1.07(a)(17). Thus, if we were reviewing the sufficiency of the evidence supporting a *conviction* for aggravated robbery, it would matter whether Cardenas used a handgun or a knife during the commission of the offense. However, because we are reviewing only whether Gonzalez violated his community supervision, the weapon used does not matter here.

10

evidence is nonetheless sufficient to prove that he committed the lesser-included offense of robbery, and the district court would not have abused its discretion in revoking Cardenas's community supervision on that ground.

We overrule Cardenas's first issue.

**Modification of judgments**

In his second issue, Cardenas asserts that each judgment contains a clerical error that requires correction. Specifically, each judgment reflects that Cardenas pleaded "not true" to the allegations in the motion to adjudicate. However, the record reflects that Cardenas did not enter any plea to the allegations.[5] The State concedes that the judgments are erroneous in this regard.

This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b) (authorizing court of appeals to modify trial court's judgment and affirm it as modified); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (reforming judgment where court had information necessary to do so). Accordingly, we modify each judgment to remove the statement that Cardenas pleaded "not true" to the motion to adjudicate and reflect instead that Cardenas made "no plea" to the motion to adjudicate.

We sustain Cardenas's second issue.

---

[5] As both Cardenas and the State acknowledge in their respective briefs, a defendant is not required to enter a plea at an adjudication hearing. *See Detrich v. State*, 545 S.W.2d 835, 837 (Tex. Crim. App. 1977); *Anthony v. State*, 962 S.W.2d 242, 246 (Tex. App.—Fort Worth 1998, no pet.); *see also Moore v. State*, No. 14–14–00350–CR, 2015 WL 4141100, at *3 (Tex. App.–Houston [14th Dist.] July 9, 2015, pet. ref'd) (mem. op., not designated for publication).

**CONCLUSION**

As modified, we affirm each judgment adjudicating guilt.

_____

Gisela D. Triana, Justice

Before Justices Baker, Triana, and Smith

Modified and, as Modified, Affirmed

Filed:   February 29, 2024

Do Not Publish

12